# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| VARIOUS REINSURERS AND RETROCESSIONAIRES SUBSCRIBING TO POLICY NUMBERS B080130181G19, B080131297G19, B080127577G19, B080130231G19, B080130291G19, B080130328G19, B080128807G19, B080130331G19 DBD, S23070001557-R01 and 02PG0000161.1, as subrogees of SHARIKET KAHRABA HADJRET EN NOUSS,<br><br>             Plaintiffs,<br><br>v.<br><br>GENERAL ELECTRIC INTERNATIONAL, INC., GENERAL ELECTRIC COMPANY, GE POWER SERVICES ENGINEERING, GE POWER, and VARIOUS JOHN DOE CORPORATIONS,<br><br>             Defendants. | Civil Action No.:<br>1:21-cv-04751-VMC |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO <u>DISMISS THE FIRST AMENDED COMPLAINT</u>

# **TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ................................................................... 1

II.  STATEMENT OF FACTS & PROCEDURAL POSTURE ....................................... 2

III. LEGAL STANDARD ........................................................................... 4

IV.  THIS COURT SHOULD COMPEL PLAINTIFFS TO ARBITRATE THEIR
     CLAIMS PURSUANT TO THE CONTRACTS AND/OR O&M CONTRACT ....... 5

     A.  The Services Contract Contains a Written Arbitration Provision ..................... 9

         1.  Non-Signatory SKH Is Bound by the Arbitration Provision ..................... 10

             a) Third-Party Beneficiary and Estoppel Law ........................................... 11

             b) Both Third-Party Beneficiary and Estoppel Apply ............................... 12

         2.  Three Non-Signatory GE Defendants May Join GEII in Enforcing the
             Arbitration Provision ................................................................... 14

     B.  The Arbitration Provision Calls for Arbitration within a Signatory Nation ...... 15

     C.  The Arbitration Provision Arises From a Legal Commercial Relationship ....... 16

     D.  The Arbitration Provision Involves Both a Non-American Citizen and a Foreign
         Commercial Relationship (Either is Sufficient) ................................................. 16

     E.  All of the Claims Fall within the Scope of the Arbitration Provision, which
         Plaintiffs Cannot Evade by Pleading "Tort" Claims ........................................... 16

     F.  Additionally, Plaintiffs Should Be Compelled to Arbitrate Their Claims Under
         the O&M Contract Between SKH and SNC ....................................................... 19

V.   ALTERNATIVELY, THE AMENDED COMPLAINT SHOULD BE
     DISMISSED .................................................................................... 22

     A.  The "Various Insurance Policies" under which Plaintiffs Initiated this Lawsuit
         Contain Subrogation Waivers Barring the Amended Complaint ...................... 23

     B.  Plaintiffs' Damages Are Barred by the Contracts .............................................. 26

     C.  Plaintiffs Fail to State a Claim for Gross Negligence (Count II) ....................... 28

D.   Plaintiffs Fail to State a Claim for Breach of the Warranty of Merchantability (Count IV) ..................................................................................... 29

E.   Plaintiffs Fail to State a Claim for Either Negligent or Fraudulent Misrepresentations (Count V) ............................................................... 31

VI.  CONCLUSION ............................................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albertson v. Art Inst. of Atlanta*,
  No. 1:16-cv-03922-WSD-RGV, 2017 U.S. Dist. LEXIS 57440
  (N.D. Ga. Mar. 23, 2017), *adopted by* 2017 U.S. Dist. LEXIS 57293
  (N.D. Ga., Apr. 14, 2017) .................................................................................... 7

*Alstom Brasil Energia E. Transporte Ltda. v. Mitsui Sumitomo Seguros S.A.*,
  No. 15 Civ. 8221 (AKH), 2016 U.S. Dist. LEXIS 80151
  (S.D.N.Y. June 20, 2016) ..................................................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 5

*Axis Specialty Ins. Co. v. Doty-Moore Tower Servs., LLC*,
  No. 1:06-CV-0261-JEC, 2008 WL 11335004 (N.D. Ga. Sept. 22, 2008) .......... 11

*Bautista v. Star Cruises*,
  396 F.3d 1289 (11th Cir. 2005) ...................................................................... 4, 6, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007) ............................................................................................... 5

*Blinco v. Green Tree Servicing, LLC*,
  400 F.3d 1308 (11th Cir. 2008) ........................................................................... 12

*Bradley v. Chiron Corp.*,
  No. C 94-04342 CW, 1996 WL 441022 (N.D. Cal. July 15, 1996) *aff'd*,
  136 F.3d 1317 (Fed. Cir. 1998) ........................................................................ 7, 8

*Cooper v. Meridian Yachts, Ltd.*,
  575 F.3d 1151 (11th Cir. 2009) ........................................................................... 17

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ........................................................................... 22

*Diamond v. Morris, Manning & Martin, LLP*,
   No. 1:09-CV-2894-TCB-CCH, 2010 WL 11507021
   (N.D. Ga. May 24, 2010) ........................................................................ 28

*Edwards v. Wis. Pharmacal Co., LLC*,
   987 F. Supp. 2d 1340 (N.D. Ga. 2013) .................................................. 30

*Fernandez v. Sch. Bd. of Miami-Dade Cty.*,
   201 F. Supp. 3d 1353 (S.D. Fla. 2016) .................................................... 8

*FindWhat Inv. Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) .............................................................. 32

*Gann v. Trabue*,
   No. 2:20-CV-90-RWS, 2020 WL 12309336 (N.D. Ga. July 27, 2020) ...................... 28

*GE Energy Power Conversion SAS Corp. v. Outokumpu Stainless USA, LLC*
   140 S. Ct. 1637 (2020) ............................................................................ 10

*Gill v. Blue Bird Body Co.*,
   147 F. App'x 807 (11th Cir. 2005) ........................................................ 30

*Heath v. Carson Smithfield LLC*,
   No. 3:17-cv-129-TCB, 2018 WL 4846532 (N.D. Ga. Jan. 3, 2018) ...................... 20

*Hines v. Mercedes-Benz USA, LLC*,
   358 F. Supp. 2d 1222 (N.D. Ga. 2005) .................................................. 30

*In re Humana Inc. Managed Care Litig.*,
   285 F.3d 971 (11th Cir. 2002), *rev'd on other grounds sub nom.*
   *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) ........................ 12

*Intellicig USA LLC v. CN Creative Ltd.*,
   No. 1-15-CV-01832-AT, 2016 WL 5402242 (N.D. Ga. July 13, 2016) .................... 32

*Interested Underwriters at Lloyd's v. M/T San Sebastian*,
   508 F. Supp. 2d 1243 (N.D. Ga. 2007) .................................................. 11

*Invista S.A.R.L. v. Rhodia, S.A.*,
   625 F.3d 75 (3d Cir. 2010) ...................................................................... 11

iv

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
  863 F.2d 315 (4th Cir. 1988) ...................................................................... 15

*Monticello v. Winnebago Indus., Inc.*,
  369 F. Supp. 2d 1350 (N.D. Ga. 2005).......................................................... 30

*Morgan v. Dick's Sporting Goods, Inc.*,
  359 F. Supp. 3d 1283 (N.D. Ga. 2019).......................................................... 30

*MS Dealer Serv. Corp. v. Franklin*,
  177 F.3d 942 (11th Cir. 1999), abrogated on other grounds, *Arthur
  Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)...................................... 11, 20

*Next Century Commc'ns Corp. v. Ellis*,
  318 F.3d 1023 (11th Cir. 2003) ..................................................................... 32

*Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard, B.V.*,
  855 F. App'x 468 (11th Cir. 2021) ................................................................. 17

*Olsher Metals Corp. v. Olsher*,
  No. 01-3212-CIV, 2003 WL 25600635 (S.D. Fla. Mar. 26, 2003), *aff'd*
  90 F. App'x 383 (11th Cir. 2003) ...............................................................5, 17

*Olsher Metals Corp. v. Olsher*,
  No. 03-12184, 2004 WL 5394012 (11th Cir. Jan. 26, 2004) ..................6, 10, 14, 17

*Paul v. Ingersoll-Rand Co.*,
  No. 1:10-CV-00708-JOF, 2011 WL 13269791 (N.D. Ga. Jan. 14, 2011) .................. 30

*A.H. ex rel. Scott v. Callaway Gardens Resort, Inc.*,
  No. 4:20-CV-00100-CDL, 2021 WL 4928009 (M.D. Ga. Oct. 21, 2021)................... 28

*Smith v. Ocwen Fin.*,
  488 F. App'x 426 (11th Cir. 2012) ................................................................. 32

*Various Insurers v. Gen. Elec. Int'l, Inc.*,
  1:21-cv-04303-MHC, Dkt. 1 (N.D. Ga. Oct. 14, 2021) ................................................ 4

*Wilke v. Troy Reg'l Med. Ctr.*,
  852 F. App'x 389 (11th Cir. 2021)................................................................... 5

**Statutes**

9 U.S.C. Chpt. 1 & 2, Federal Arbitration Act (the "FAA") ........................... 4, 5

O.C.G.A.
    § 11-2-313 ............................................................................................... 30
    § 51-1-4 .................................................................................................... 28

Telephone Consumer Protection Act ("TCPA") ............................................ 20

**Other Authorities**

FRCP
    9(b) ......................................................................................................... 32
    12 ................................................................................................... 5, 22, 32

*Status: Convention on the Recognition and Enforcement of Foreign Arbitral
    Awards*, United Nations Commission on International Trade Law,
    https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_a
    wards/status2 ........................................................................................... 15

Defendants General Electric International, Inc. ("GEII"), General Electric Company ("GEC"), GE Power Services Engineering ("GE PSE"), and GE Power (together, the "GE Defendants"), submit this Memorandum of Law in Support of their Motion to Compel Arbitration or Dismiss Plaintiffs' First "Amended Complaint" (Dkt. 18).

## I.   PRELIMINARY STATEMENT

In this subrogation action, Plaintiffs—all reinsurers and/or retrocessionaires—seek to recoup losses allegedly resulting from the failure of component(s) and/or service(s) provided by one or more GE Defendants in an Algerian electricity generation facility. All the components and services were furnished under contracts containing a mandatory arbitration provision, including one within a "Services Contract" (defined below and expressly referenced in the Amended Complaint, Dkt. 18 ¶18). This Motion seeks enforcement of its mandatory arbitration provision, through reliance on various non-signatory doctrines that bind Plaintiffs' insured (and, therefore, Plaintiffs). Underscoring the propriety of arbitration to this action (and providing another basis to compel it), the procedures of the arbitration that the GE Defendants seek to compel with this Motion (location, organization, etc.) are synonymous with another agreement to arbitrate within an "O&M Contract" (discussed below) regarding this same facility's operation and maintenance entered by Plaintiffs' insured (SKH, discussed below).

If this Court declines to compel arbitration, the GE Defendants, alternatively, seek dismissal because: (i) as required by the Services Contract and O&M Contract, Plaintiffs

waived any right of subrogation as to the GE Defendants, which precludes this action in its entirety; (ii) Plaintiffs' damages are barred by the Contracts (defined below); and (iii) Plaintiffs fail to sufficiently plead Counts II (Gross Negligence), IV (Breach of Warranty of Merchantability), and V (Negligent and/or Fraudulent Misrepresentations).

## II.    STATEMENT OF FACTS & PROCEDURAL POSTURE

This case relates to an alleged, October 14, 2019 "Incident" at the Hadjret En Nouss Plant in Tipaza, Algeria (the "Plant"). Am. Compl. ¶1. The Plant is owned by Shariket Kahraba Hadjret En Nouss ("SKH"). *Id.* ¶2, 42. SNC-Lavalin Constructeurs International Inc. ("SNC") owns a material portion of, and is an affiliate of, SKH. SNC built the Plant pursuant to a contract with SKH and operates it under an Operation and Maintenance Contract entered into between SKH and SNC on or about July 15, 2006 ("O&M Contract"). *Id.* ¶43; Orig. Compl. ¶45; Ex. 6.[1] SNC, in that role, entered contracts with one or more of the GE Defendants. *See* Ex. 1-4; Ex. 6 §26.

On June 30, 2006, SNC and GEC entered into the "Supply Contract" for the purchase of turbines and their respective packages (the "Power Train Sets"). Ex. 2. On or around September 2006, GEII and SNC entered into the "Services Contract" for GEII to perform periodic maintenance services and replacement of components of the Power Train Sets at SKH's Plant. Ex. 1 §1.35; Am. Compl. ¶55-56. Finally, on December 15, 2006 GEII and SNC entered into the "Installation Contract" for GEII to provide services concerning the

---

[1] All citations to "Ex. __" refer to the exhibits attached to the concurrently filed Declaration of William K Whitner.

installation and start-up of the Power Train Sets, and GEC, GEII, and SNC entered into the "Coordination Agreement" concerning the same. Ex. 3-4 (together with the Supply Contract, the Services Contract, and the Installation Contract, the "Contracts").

Central to this Motion, all Contracts require that all disputes be submitted to arbitration.[2] SNC and GEC agreed all disputes "arising out of the [Supply] Contract" would be arbitrated. Ex. 2 §18.5. In the Services Contract, SNC and GEII agreed to arbitrate "any or all disputes arising from this Agreement or concerning it." Ex. 1 §25.2. In the Installation Contract, SNC and GEII agreed that any disputes would be submitted to arbitration. Ex. 3 §6. Finally, all three parties to the Coordination Agreement—SNC, GEC and GEII—agreed to resolve all disputes pursuant to Article 18 of the Supply Contract. Ex. 2 §18.5, Ex. 4 §3.10. Demonstrating the propriety and fairness of requiring arbitration of this action, Plaintiffs' insured (SKH) and SNC (GE Defendants' counterparty in each of the Contracts) separately agreed to arbitrate disputes arising from or in connection with the O&M Contract (under which the Services Contract is, practically, a subcontract). Ex. 6 §25.

*Exclusively* in performance of—and *solely* because of—the Services Contract, one of the GE Defendants installed the "S1Bs" at issue in this case (one type of "Blades"[3] in

---

[2] The Contracts require attempts to amicably resolve all disputes before submitting them to arbitration. Ex. 1 §25.1, Ex. 2 §§18.2-18.4, Ex. 3 §6, Ex. 4 §3.10. Although Plaintiffs never attempted to resolve any of their claims in the Original Complaint prior to filing it, the Contracts' mandatory arbitration provisions control.

[3] Blades are components of the Power Train Sets and require replacement over time. Multiple sets of replacement Blades (including the "S1Bs" at issue in the Amended Complaint) were provided, under the Services Contract, prior to the Incident.

the Plant's turbines) in April 2018. Am. Compl. ¶¶1, 89. Those Blades purportedly failed on October 14, 2019. The Amended Complaint alleges that failure was caused by the GE Defendants' design, manufacture, and installation of the Blades. *Id*. ¶¶1, 54-55, Ex. 1-4. The Original Complaint alleged such failure resulted from "maintenance services" of the Blades under the Services Contract (silent as to the other Contracts). (Orig. Compl. ¶56).

On October 14, 2021, a group of plaintiffs, only identified as reinsurers and retrocessionaires subscribing to various insurance policies with SKH, filed two nearly-identical complaints in Georgia state and federal courts. *See* Orig. Compl.; *Various Insurers v. Gen. Elec. Int'l, Inc.,* 1:21-cv-04303-MHC, Dkt. 1 (N.D. Ga. Oct. 14, 2021). Plaintiffs only served the GE Defendants with the state court Original Complaint, which was removed to this Court on Nov. 17, 2021. *See* Dkt. 1. Following the GE Defendants' Motion to Compel Arbitration/Dismiss directed to the Original Complaint (Dkt. 15), Plaintiffs amended that complaint on June 24, 2022. (Dkt. 18-1).

## III.  **LEGAL STANDARD**

A district court may order parties to arbitration pursuant to an international arbitration agreement. 9 U.S.C §§206. The court conducts "a very limited inquiry" into whether the necessary factors are present to compel arbitration, and analyzes the arguments in light of the "strong presumption in favor of arbitration of international commercial disputes." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294-95 (11th Cir. 2005) (citations omitted). Where all of the claims are subject to arbitration, dismissal of the action is

appropriate. *See Olsher Metals Corp. v. Olsher,* No. 01-3212-CIV, 2003 WL 25600635, at

\*9 (S.D. Fla. Mar. 26, 2003), *aff'd* 90 F. App'x 383 (11th Cir. 2003) ("*Olsher I*").

To survive a motion to dismiss under FRCP 12(b)(6), a plaintiff must allege

sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face."[4]

## IV.    THIS COURT SHOULD COMPEL PLAINTIFFS TO ARBITRATE THEIR CLAIMS PURSUANT TO THE CONTRACTS AND/OR O&M CONTRACT

Federal courts recognize and enforce commercial arbitration agreements under the

terms of the Federal Arbitration Act (the "FAA"). The FAA separately addresses domestic

and international arbitration agreements. *See* 9 U.S.C. Chpt. 1 & 2. Chapter 2 of the FAA

adopts The Convention on the Recognition and Enforcement of Foreign Arbitral Awards

(the "Convention"), under which United States courts have jurisdiction[5] to enforce

mandatory arbitration clauses in international agreements. 9 U.S.C §§201, 202, 205, 206.

In order to compel arbitration under the Convention, four jurisdictional prerequisites

must be met: "(1) there is an agreement in writing within the meaning of the Convention;

(2) the agreement provides for arbitration in the territory of a signatory of the Convention;

(3) the agreement arises out of a legal relationship, whether contractual or not, which is

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When evaluating the complaint, a court should "disregard allegations that are merely legal conclusions." *Wilke v. Troy Reg'l Med. Ctr.*, 852 F. App'x 389, 392 (11th Cir. 2021). Dismissal for failure to state a claim is proper if the factual allegations are not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (2007).
[5] The parties anticipate reaching agreement on this issue.

considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Bautista*, 396 F.3d at 1295 n.7. Additionally, to compel arbitration, the claims at issue must fall within the scope of the arbitration provision. *See Olsher Metals Corp. v. Olsher*, No. 03-12184, 2004 WL 5394012, at *3 (11th Cir. Jan. 26, 2004) ("*Olsher II*").

Recognizing the Original Complaint's direct reference to and reliance on the Services Contract, and because the *only* Blades at issue in this case were obtained *solely* because of that same contract, this Motion focuses on the Services Contract to establish all four jurisdictional elements pursuant to federal law are satisfied and to show Plaintiffs' claims all fall within the scope of the Services Contract's arbitration provision. *Compare* Orig. Compl. ¶¶4-9, 19, 56 (allegations regarding the Blades' maintenance and service, governed by the Services Contract), *with* Am. Compl. ¶¶ 4-9, 18. Plaintiffs' Amended Complaint is an incomplete and ineffective attempt to avoid arbitration by isolating Plaintiffs' claims from the Services Contract and/or any "service" provided by the GE Defendants under that contract. As to incompleteness: while Plaintiffs seemingly intended to remove any references to "services"/the Services Contract, the Amended Complaint still includes an explicit reference to the "Services Contract" in ¶18 (meaning it is not outside the pleadings). As to ineffectiveness (and even if the Services Contract was outside the pleadings): Plaintiffs' 15+ deletions[6] of references to the Services Contract, service[], and

---

[6] *See* Dkt. 18-1 ¶¶1, 3, 26, 33, 40, 56-57, 63, 89-90, 96-97, 130-31 (deleting "service,"

maintenance do not preclude the Court from considering the Services Contract because "[t]he Court may consider evidence outside of the pleadings for purposes of a motion to compel arbitration."[7] The Original Complaint's contents are evidence admissible against Plaintiffs, irrespective of whether that complaint was superseded by amendment. *Compton v. Bach*, 374 F. Supp. 3d 1296, 1304 (N.D. Ga. 2019) ("[A] [party] may offer into evidence an admission in an original pleading" by an opposing party; denying defendant's motion *in limine* to exclude any reference to superseded pleadings where plaintiffs argued "that prior statements of fact in the pleadings are admissible against [d]efendant as *in judicio* admissions"). Some of the most notable "amendments" to the Original Complaint are the deletion of ¶56, in relation to modification of ¶57:

> 56. Furthermore, pursuant to a Services Contract entered into by and between SNC and GE International in or around September 2006, GE International agreed to perform maintenance services at the Power Plant—which included, inter alia, the "periodic inspection, testing, repair and/or replacement of components of the [Power Trains]."

> 57.55. Thus, GE International, and the other Defendants, were solely responsible for the safe and competent design, manufacture, and installation, and servicing of the Power Trains and their components, including the gas turbines and S1Bs.

(Dkt. 18-1).

Plaintiffs' "amendments" purging most references to "services" and the Services

---

"services," "serviced," and "servicing"); ¶¶19, 56 (deleting "maintenance"); ¶56, at 33 (deleting "Services Contract" and "Defendants … contractual duties") (strikethrough ¶#).

[7] *Albertson v. Art Inst. of Atlanta*, No. 1:16-cv-03922-WSD-RGV, 2017 U.S. Dist. LEXIS 57440, at *2 n.3 (N.D. Ga. Mar. 23, 2017) (citation and quotation omitted), *adopted by* 2017 U.S. Dist. LEXIS 57293 (N.D. Ga., Apr. 14, 2017).

Contract from the Original Complaint amount to "sham pleading."  *See Bradley v. Chiron Corp.*, No. C 94-04342 CW, 1996 WL 441022, at *3 (N.D. Cal. July 15, 1996) *aff'd,* 136 F.3d 1317 (Fed. Cir. 1998). "[A] court may disregard the contradictory and manipulated allegations of an amended pleading" "where the plaintiff made a transparent attempt … to amend his pleading[s] in order to avoid a dispositive defense raised by the defendant and the amended complaint directly contradicted the original complaint."[8] *Fernandez v. Sch. Bd. of Miami-Dade Cty.*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016) (citations and quotations omitted). In *Fernandez*, another District Court in this Circuit disregarded a plaintiff's analogous deletions from an amended complaint, and the Court should do so here, for the same reasons (*i.e.,* dodging dispositive defense of arbitration by deleting references to the Services Contract in the Original Complaint that were "integral" to GE Defendants' arguments supporting arbitration).[9]

---

[8] Although a contradiction is not necessary under the authority cited, the Amended Complaint does contradict the Original Complaint. *See* Dkt. 18-1 ¶18 (deleting "~~with respect to the maintenance of the turbine blades at issue~~" when mentioning the Services Contract); *id.* at 33 (deleting request for "~~a declaration that Defendants are~~ in ~~violation of their respective contractual duties~~").

[9] In *Fernandez*, plaintiffs' Complaint and First Amended Complaint contained allegations regarding "unlawful reprisal proceedings before the Florida Department of Education," each of which triggered defendant moving to dismiss (in part) based on the unlawful reprisal proceedings resulting in a bar by the doctrines of res judicata and collateral estoppel. *Id.* "The Second Amended Complaint inexplicably remove[d] all allegations regarding the unlawful reprisal proceedings—allegations that are, of course, integral the School Board's argument that the Plaintiffs' claims are barred by res judicata and collateral estoppel." *Id.* The Southern District of Florida "recite[d] the pertinent facts … as they previously appeared" in the prior versions of the complaint in ruling on both res judicata and collateral estoppel defenses. *Id.* at 1361 n.1, 1363-65.

The Services Contract is, alone, dispositive and requires Plaintiffs' claims be arbitrated. The other Contracts are, nonetheless, discussed briefly as further validating the GE Defendants' request to compel arbitration.[10] What's more, the O&M Contract between SKH and SNC provides an additional basis for compelling arbitration of this action—both as another agreement to arbitrate enforceable against Plaintiffs by the GE Defendants and exemplifying the propriety and fairness of enforcing the Services Contract's arbitration provision against Plaintiffs (due to its nearly identical arbitration provision).

## A.    The Services Contract Contains a Written Arbitration Provision

The first jurisdictional prerequisite is satisfied where there is "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." *Bautista*, 396 F.3d at 1300 (citing Convention, art. II(2)).

Here, in or around September 2006, GEII entered into the written Services Contract with SNC, the Plant's operator. Am. Compl. ¶18; Orig. Compl. ¶56. Both GEII and SNC signed the Services Contract, Ex. 1 at Signature Page, in which the parties agreed to arbitrate any disputes arising from or concerning the Services Contract:

> The Parties agree that any or all disputes arising from this Agreement or concerning it … shall be definitively resolved on the basis of the Conciliation and Arbitration Rules of the International Chamber of Commerce ICC (hereinafter referred to as the "Rules") by three arbitrators appointed by the ICC Court of Arbitration (hereinafter referred to as the "Court of Arbitration") in accordance with these Rules, the decisions of which shall be final and not open to appeal.

---

[10] The other Contracts, likewise, contain broad provisions in writing that concern the issues and claims in the Amended Complaint, benefitted SKH through its Plant, and were for a commercial purpose. *See* Ex. 1 §25.2, Ex. 2 §18.5, Ex. 3 §6, Ex. 4 §3.10.

Ex. 1 §25.2 (the "Arbitration Provision"). [11]

Although neither SKH nor three of the four GE Defendants signed the Services Contract, SKH is still bound to the Services Contract (including its Arbitration Provision) under non-signatory doctrines, and the remaining GE Defendants are entitled to invoke its Arbitration Provision.

### 1.    Non-Signatory SKH Is Bound by the Arbitration Provision

In *GE Energy Power Conversion SAS Corp. v. Outokumpu Stainless USA, LLC*, the Supreme Court held that domestic non-signatory doctrines can be applied to mandatory arbitration provisions contained in international commercial agreements under the Convention. 140 S. Ct. 1637, 1648 (2020). Pursuant to federal common law,[12] SKH and,

---

[11] To the extent the Court relies on the other Contracts, the arbitration provisions within each of them are: (i) in the Supply Contract: "In the event that the Dispute is not settled …the Dispute shall be submitted to the arbitration procedure as per the provisions of Article 18.5 of this Contract," with "Dispute" defined as "any claim arising out of the implementation or performance of the Contract or related thereto…," Ex. 2 at §18.2(A), (C); (ii) the Installation Contract: "Any dispute which cannot be settled by agreement of the Parties shall be submitted to arbitration …," Ex. 3 at §6; and (iii) the Coordination Agreement: "any disputes between [SNC] and any or all of [GEC and GEII] under one or more of this Coordination Agreement or the Contracts shall be resolved pursuant to the provisions of Article 18 of the [Supply Contract]," Ex. 4 at §3.10. The non-signatory doctrines discussed below apply under the same rationale to these other Contracts, as does the non-party GE Defendants' invocation of their respective arbitration provisions.

[12] For international arbitration agreements under Chapter 2 of the FAA courts analyze these issues under federal common law. *Olsher II*, 2004 WL 5394012, at *2 (affirming district court that "all questions relating to the scope, interpretation, and construction of the arbitration clause will be answered according to federal law."). Federal common law applies to the scope and applicability of international arbitration agreements, even where the contract contains a choice-of-law provision specifying law other than those of the United States (or any state within the United States) applies. *Id.* (affirming "choice-of-law clause applies only to the substantive rights and duties of the parties during arbitration").

by extension, Plaintiffs[13] are bound to the Arbitration Provision under non-signatory doctrines of third-party beneficiary and estoppel.

### a) Third-Party Beneficiary and Estoppel Law

A non-signatory can be compelled to arbitrate when an intention existed at the time the contract containing the arbitration provision was formed that the third party would be a beneficiary of the contract. *Interested Underwriters at Lloyd's v. M/T San Sebastian*, 508 F. Supp. 2d 1243, 1249 (N.D. Ga. 2007). Where a contract affords a third party rights under its terms, the third party is a beneficiary of the contract. *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), abrogated on other grounds, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (third party beneficiary applies where "parties to a contract together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract") (citation omitted).

Similarly, "estoppel can bind a non-signatory to an arbitration clause when that non-signatory has reaped the benefits of a contract containing an arbitration clause" in order to prevent "a non-signatory from cherry-picking the provision of a contract that it will benefit from." *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010) (citation omitted);

---

[13] As subrogees, Plaintiffs stand in the position of SKH. *See Axis Specialty Ins. Co. v. Doty-Moore Tower Servs., LLC*, No. 1:06-CV-0261-JEC, 2008 WL 11335004, at *4 (N.D. Ga. Sept. 22, 2008) ("When asserting subrogation rights in the name of the insured, the insurance company stands squarely in the place of its insured, having no greater and no less rights against the tortfeasor.") (citations omitted).

*see also In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) ("The purpose of [estoppel] is to prevent a plaintiff from, in effect, trying to have his cake and eat it too; that is, from relying on the contract when it works to his advantage by establishing the claim, and repudiating it when it works to his disadvantage by requiring arbitration."); *Blinco v. Green Tree Servicing, LLC,* 400 F.3d 1308 (11th Cir. 2008).

### b)     Both Third-Party Beneficiary and Estoppel Apply

SKH is bound to the Services Contract's Arbitration Provision under the doctrines of third-party beneficiary and estoppel, as: (1) Plaintiffs explicitly sought relief under the Services Contract in the Original Complaint; (2) SKH—an affiliate of and owned by SNC—benefitted from performance of the Services Contract that SNC signed; and (3) SKH was expressly granted rights and benefits under the Services Contract.

First, the Original Complaint requested "[e]quitable relief, including … a declaration that GE Defendants are in violation of their respective contractual duties, and/or restitution for any sums by which Defendants have been unjustly enriched." Orig. Compl. at 29. Because the only contract of the GE Defendants the Original Complaint referenced was the Services Contract, *see gen. id.*; *see also id.* ¶¶19, 56, the relief requested in the Original Complaint for a declaration the GE Defendants' violated contract duties could only have referred to the Services Contract.[14] Additionally, the Amended Complaint necessarily *still*

---

[14] This is further supported by the Original Complaint's statement concerning jurisdiction in the Georgia State-Wide Business Court (prior to removal), which stated it alleged "tort

depends on the Services Contract to make its claims and, as detailed *infra* IV.E, Plaintiffs'

new allegation duties owed SKH are "independent of any contractual duty" does not make

it so. Am. Compl. ¶¶87, 94. Any such "duties" *still* stem from the Services Contract, as the

Original Complaint acknowledges. Orig. Compl. ¶¶56-57; *see e.g. id.* ¶¶89, 96. Plaintiffs

cannot both seek relief under, and rely on, the Services Contract (transparently stated in

the Original Complaint) and simultaneously avoid its Arbitration Provision.

Second, the purpose of the Services Contract was for GEII to service and maintain,

specifically, the very Blades at issue in this case within the Plant *owned* by SKH—an entity

that SNC, in part, owns. Ex. 1 at Preamble, §1.11. GEII did not contract directly with SKH

because SKH entered into the O&M Contract with SNC to operate SKH's Plant. *See id.*

§1.11. In installing, servicing, and maintaining the Blades at the Plant under the Services

Contract, SKH directly benefited because it was *SKH's Plant* that received GEII's services.

Third, various provisions of the Services Contract either entitle SKH (defined therein

as the "Project Owner") to certain benefits from GEII or entitle SKH to directly instruct

GEII regarding GEII's obligations under the Services Contract. For example, the Services

Contract entitles SKH to modify GEII's performance obligations and standards.[15]

---

contract claims." Orig. Compl. ¶13. Again, the only contract (of GE Defendants) referred
therein is the Services Contract. Plaintiffs cannot base their entire Complaint on the
Services Contract and then deny the application of its express Arbitration Provision.

[15] *See id*. §§1.57 (GEII's Additional Services it is obligated to perform include "changes to
the Power Train Set decided upon by either **the Project Owner** or the Operator")
(emphasis added). Additionally, despite not being a signatory to the Services Contract, the
Services Contract gave SKH certain rights and powers over or pertaining to GEII and its

For at least the foregoing three reasons, SKH is bound to the Arbitration Provision under the third-party beneficiary and estoppel doctrines. For years, SKH benefited from the Services Contract by having the necessary Blades maintained by GEII pursuant to that contract (including the very Blades that allegedly failed and precipitated this case). The Services Contract explicitly conferred SKH certain rights/powers over GEII's obligations. The Original Complaint's transparent request for remedies under the Services Contract evidences SKH's "benefit" from it. SKH cannot knowingly receive all of these benefits from the Services Contract, only to have its insurers then "cherry-pick" the Services Contract's provisions Plaintiffs do not want applied to them: the Arbitration Provision.

### 2. Three Non-Signatory GE Defendants May Join GEII in Enforcing the Arbitration Provision

While only Defendant GEII is a signatory to the Services Contract, the remaining GE Defendants also can, and do, invoke the Arbitration Provision. Parties having a close relationship with an agreement's signatory can invoke an arbitration provision. *See Olsher II*, 2004 WL 5394012, at *3 ("[E]ach of these defendants-whether or not a signatory to the

---

work. *See id.* §§6.14 (requiring GEII to create and maintain operation and maintenance reports and certificates, and providing "**The Project Owner** and the Operator may have access to [them]" including that GEII "shall provide immediate access to all documents required in the context of an audit or for drawing up financial reports.") (emphasis added), 15 (granting and limiting property rights with respect to GEII, SNC, and SKH including, that material created by GEII "shall be used by the Operator and/or **the Project Owner**, free of valuable consideration…") (emphasis added), 21 (where GEII cannot react to emergency circumstances at the Plant, entitling "the Operator or **the Project Owner** [to] make any or all decisions without informing [GEII] beforehand, and take any or all measures that the Operator or **the Project Owner** shall deem to be reasonable and necessary in the light of the circumstances…") (emphasis added).

1994 Agreement-can invoke the arbitration clause in the light of their close relationship to the parties to the agreement"). The remaining GE Defendants have a sufficiently close relationship to GEII to invoke the Arbitration Provision. GEC is the parent company of GEII and allegedly "was itself directly involved with the design, manufacture, and installation of the turbine blades at the Plant."[16] Am. Compl. ¶¶24-25.[17]

Defendants GE PSE and GE Power are not actual legal entities and are, instead, mere trade names for GEII and/or GEC (the Amended Complaint incorrectly alleges they are divisions of GEII and/or GEC). Am. Compl. ¶¶28, 34. Therefore, GE PSE and GE Power's invocation of arbitration is derivative of GEII and/or GEC.[18]

**B.    The Arbitration Provision Calls for Arbitration within a Signatory Nation**

The second jurisdictional prerequisite—arbitration within a country that signed the Convention[19]—is also satisfied. The Services Contract calls for the arbitration to take place

---

[16] Alternatively, and to the extent the Court concludes GEC is not sufficiently close to GEII, the GE Defendants rely on two of the other Contracts, each with mandatory arbitration provisions: (i) the Supply Contract, under which the Blades were purchased from GEC, a signatory, Ex. 2; and (ii) the Coordination Agreement, to which GEC was a signatory. Ex. 4.

[17] *See also J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 320–21 (4th Cir. 1988) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.").

[18] If this case proceeds in this Court, the GE Defendants intend to seek dismissal of GE PSE and GE Power on this basis via a separate motion.

[19] *Status: Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, United Nations Commission on International Trade Law, https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2.

in Paris, France, Ex. 1 §25.2, and France is a signatory to the Convention.[20]

### C.     The Arbitration Provision Arises From a Legal Commercial Relationship

The third jurisdictional prerequisite, which requires the arbitration provision to arise

out of a commercial relationship, is met. The Arbitration Provision is contained within the

Services Contract, which was entered into between GEII and SNC for the commercial

purposes of GEII supplying and maintaining the Blades to the Plant, which was operated

by SNC. Ex. 1 at Preamble.[21]

### D.     The Arbitration Provision Involves Both a Non-American Citizen and a Foreign Commercial Relationship (Either is Sufficient)

The fourth and final jurisdictional prerequisite requires *either* a non-American party

or a relation to a foreign nation. The Services Contract meets both. The two parties to the

Services Contract are GEII and SNC. SNC is a Canadian Company. Ex. 1 at Preamble.

Additionally, the commercial relationship has a reasonable relation to Algeria as the

Services Contract pertains to work at the Plant in Tipaza, Algeria. Orig. Compl. ¶¶1, 56.[22]

### E.     All of the Claims Fall within the Scope of the Arbitration Provision, which Plaintiffs Cannot Evade by Pleading "Tort" Claims

The Arbitration Provision covers "any or all Disputes arising from this Agreement

or concerning it." Ex. 1 §25.2. Courts consistently hold that arbitration provisions with

language nearly identical to the Arbitration Provision are broad, encompassing all claims

---

[20] Concerning the other Contracts, Switzerland is also a signatory nation. *Id.*
[21] Concerning the other Contracts, the nexus of the Blades (shared with the Services Contract) establishes these Contracts, too, arise from a commercial relationship. Ex. 2-4.
[22] *See also* Ex. 1. SNC is also a party to the other Contracts, which also concern the Plant.

connected to an agreement, irrespective of how pled (*i.e.,* in tort or contract).[23] Plaintiffs deliberately advance "tort" claims (*e.g.,* sounding in negligence, strict liability, and fraud), but parties "may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract." *Olsher I*, 2003 WL 25600635, at *5 (citation omitted), *abrogated on other grounds, Lawson v. Life of the S. Ins. Co.,* 648 F.3d 1166, 1171 (11th Cir. 2011). Where the injury complained of arises from the performance of a contract containing the arbitration provision, the claim falls within the scope of arbitration. *Alstom Brasil Energia E. Transporte Ltda. v. Mitsui Sumitomo Seguros S.A.*, No. 15 Civ. 8221 (AKH), 2016 U.S. Dist. LEXIS 80151, at *15-*16 (S.D.N.Y. June 20, 2016) (insurer/subrogee's "characterization of the contract dispute as a tort is an invention to serve an argument" "the arbitration clause … was limited to contract disputes"); *see Olsher II*, 2004 WL 5394012, at *3.

First, the Original Complaint expressly relied on the Services Contract in seeking "equitable relief, including but not limited to a declaration that Defendants are in violation of their respective contractual duties…" Orig. Compl. at 29. The Services Contract was the only contract in the Original Complaint to which a GE Defendant is a party, and it is *only*

---

[23] *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009) (holding provision encompassing "all disputes arising out of or in connection with" the agreement extended to "claims … that the foodlift constructed … as part of the agreement, was negligently or defectively manufactured"); *see Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard, B.V.*, 855 F. App'x 468, 473 (11th Cir. 2021) (where arbitration provision covered "any dispute arising out of or in connection with this Agreement," noting "we have consistently held that such language is broad in scope.").

pursuant to the Services Contract that the Blades that allegedly failed were provided. *See gen.* Dkt. 18-1. By seeking relief declaring the GE Defendants are in breach of their duties under the Services Contract, Plaintiffs have already shown this action falls within the scope of the Arbitration Provision. Plaintiffs' strategic deletions from the Original Complaint (among other line edits), *id.*, in response to a request to compel arbitration have not changed the true nature of their claims and do not allow them to sidestep the Arbitration Provision.

Moreover, Plaintiffs base their Amended Complaint on the GE Defendants' alleged defective design, manufacture, and installation (tantamount to maintenance/service) of the Blades. *See e.g.* Am. Compl. ¶¶1, 3, 25. While Plaintiffs allege the GE Defendants held themselves out to SKH to be able to design, manufacture, and install the Blades, *id.* ¶3, the Original Complaint *acknowledged* that those services were *only* provided because of the Services Contract with SNC. Orig. Compl. ¶¶56-57 ("Pursuant to a Services Contract … between SNC and [GEII] …, [GEII] agreed to perform maintenance services at the Plant— which included, *inter alia*, the 'periodic inspection, testing, repair and/or replacement of components of the [Power Trains]…' Thus, [GEII], and the other Defendants, were solely responsible for the safe and competent design, manufacture, installation, and servicing of the Power Trains and their components"); *see also id.* ¶19 (explaining Services Contract relates "to the maintenance of the turbine blades at issue"). The Amended Complaint never alleges, nor could it, the GE Defendants took any actions at the Plant as a result of direct dealings with SKH or separate from the Services Contract (or, for that matter, that did not

involve any of the other Contracts[24]). As all claims arise from the Services Contract (governed by the Arbitration Provision) (or, alternatively, the Other Contracts also requiring arbitration), Plaintiffs should be compelled to arbitrate and this case dismissed.

### F. Additionally, Plaintiffs Should Be Compelled to Arbitrate Their Claims Under the O&M Contract Between SKH and SNC

If the Contracts between SNC and the GE Defendants are not alone sufficient to require this action be arbitrated, this Court should (additionally, or in the alternative) compel Plaintiffs to arbitrate in consideration of the arbitration provision within the O&M Contract between SKH and SNC. *See* Ex. 6. The O&M Contract contains its own agreement to arbitrate, which is nearly identical to the Arbitration Provision within the Services Contract.[25] *Id*. §25.3 ("The Parties agree that all Disputes arising from or in connection with this Contract which cannot be settled in accordance with the provisions of Articles 25.1 or 25.2 shall be settled definitively according to the conciliation and arbitration rules of the International Chamber of Commerce.").

Under the doctrine of equitable estoppel, the GE Defendants can (also) enforce the O&M Contract's arbitration provision (as non-signatories) and compel Plaintiffs (subrogees of a signatory) to arbitrate.

[A] non-signatory to an arbitration agreement may compel a signatory to that

---

[24] The Blades at issue are the subject of the Contracts and, without those Contracts, no Blades would have been manufactured for, sold to, installed in, or maintained at the Plant. *Id.* ¶¶19, 56; Ex. 1-4.

[25] The O&M Contract and Services Contract are substantially similar and appear to be coordinated agreements. Various provisions occur under the same section numbers, and have substantively identical—if not verbatim—wording.

agreement to arbitrate a dispute where a careful review of the relationship among
the parties, the contracts they signed ... and the issues that had arisen among them
discloses that the issues the nonsignatory is seeking to resolve in arbitration are
intertwined with the agreement that the estopped party has signed.

*Heath v. Carson Smithfield LLC*, No. 3:17-cv-129-TCB, 2018 WL 4846532, at *3 (N.D.

Ga. Jan. 3, 2018) (quoting *Ragone v. Atl. Video at the Manhattan Ctr.*, 595 F.3d 115, 126–

27 (2d Cir. 2010)).[26] In *Heath* the plaintiff entered into a credit card agreement with a third

party, which contained an arbitration provision. *Heath*, 2018 WL 4846532, at *1. That third

party then contracted out to the defendant for debt collection services. *Id.* Plaintiff filed

suit against the defendant for violation of the Telephone Consumer Protection Act

("TCPA"), because the defendant allegedly called plaintiff's cell phone without consent.

This Court found that equitable estoppel allowed the defendant—a non-signatory to the

credit card agreement—to compel arbitration for a claim under the TCPA because the debt

referenced in the complaint, on which defendant called plaintiff's cell phone to collect, was

"the outstanding balance on [plaintiff's] account, which is governed by the [arbitration]

agreement." *Id.* at *3.

Like the credit card agreement in *Heath*, the Amended Complaint is intertwined with

the O&M Contract. SKH entered the O&M Contract with SNC and retained SNC to operate

---

[26] *See also MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999),
*abrogated on other grounds, Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x
475, 476 (11th Cir. 2012) ("[E]quitable estoppel applies when the signatory to a written
agreement containing an arbitration clause must rely on the terms of the written
agreement in asserting [its] claims against the nonsignatory.") (quotation omitted).

and maintain that Plant. Ex. 6 at Preamble. The O&M Contract empowers SNC to enter into subcontracts for operation and maintenance of that Plant, *id.* §26, pursuant to which SNC entered Contracts with the GE Defendants for the purchase, installation, and maintenance of the Blades at SKH's Plant. *See* Ex. 1-4. Only through the O&M Contract did SNC have any authority with regard to the Plant and could it enter into the Contracts with the GE Defendants for their services at the Plant that are central to this action. *See e.g.* Ex. 1 at Preamble. The supply/service of the Blades at the heart of the Amended Complaint all arise from, specifically, the Services Contract, which could only have been entered into by SNC because SKH delegated its authority to operate and maintain its Plant to SNC via the O&M Contract. As the GE Defendants' conduct complained of in the Amended Complaint could not have arisen—and would not have been performed—but for the O&M Contract (and, derivatively, the Services Contract), Plaintiffs are (also) equitably estopped from avoiding arbitration. The relationship among the parties, various contracts, and issues at hand demonstrate Plaintiffs are estopped from avoiding arbitration.

While Plaintiffs may now prefer litigation over arbitration, they cannot avoid their subrogor's broad commitment to arbitrate. Nor can Plaintiffs ignore the fact and legal consequences of SKH receiving all the benefits of the Contracts—the supply, installation, and maintenance of the Blades—merely because those Contracts were executed by SNC as a result of the O&M Contract (rather than directly with SKH). Every known, relevant interaction between (1) SKH and SNC, and (2) SNC and the GE

Defendants—all sophisticated entities—arose from the performance of contracts, and every known contract between these entities concerning the Plant includes an arbitration provision. The nearly identical procedures for arbitration as between the O&M Contract and the Services Contract (by way of example) buttress the propriety and fairness of requiring arbitration of this action.[27]  As the Amended Complaint is entirely premised on SKH's authorization of SNC to operate and maintain the Plant under the O&M Contract, and it is only through this authority that SNC entered the Contracts with the GE Defendants for the exact conduct about which Plaintiffs now complain, Plaintiffs are equitably estopped from denying that this Action is subject to arbitration under either the O&M Contract's arbitration provision or the Contracts' Arbitrations Provisions.

## V.   **ALTERNATIVELY, THE AMENDED COMPLAINT SHOULD BE DISMISSED**

If the Court declines to compel Plaintiffs to arbitrate, the Court should dismiss Plaintiffs' claims, either in whole or in part, under FRCP 12, because: (1) the insurance policies Plaintiffs sue under include subrogation waivers barring the Amended Complaint; (2) Plaintiffs' damages are limited by the Contracts; and (3) Counts II, IV, and V fail to plead sufficient facts to state a claim.[28]

---

[27] Irrespective of whether Plaintiffs are required to arbitrate under the O&M Contract or the Services Contract, the resulting proceeding will be conducted: (i) under the same arbitration rules of the International Chamber of Commerce; (ii) in the same location of Paris, France; and (iii) at least in the same language of French (if not English as well). *Compare* Ex. 1 §25.2, *with* Ex. 6 §25.3

[28] On a motion to dismiss, the Court may consider documents referenced in or central to the complaint. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The Services

A.   **The "Various Insurance Policies" under which Plaintiffs Initiated this Lawsuit Contain Subrogation Waivers Barring the Amended Complaint**

"Plaintiffs … seek recovery (as SKH's subrogees) from [the GE] Defendants," Am. Compl. ¶11, meaning the Amended Complaint is *entirely* premised on Plaintiffs having subrogation rights against the GE Defendants under an insurance policy. However, Plaintiffs' subrogation rights, if any, were waived. After repeated requests for all insurance policies on which Plaintiffs' subrogation rights precipitating this case are premised, the sole policy Plaintiffs' counsel provided (and represented as "the original policy wording") includes the following, explicit waiver:

**13. RELEASE FROM LIABILITY AND SUBROGATION**
…It is understood and agreed that the *Insurer agrees to waive its rights of subrogation against General Electric International Inc* solely in respect of their activities on the Insured's Premises and as more fully defined in this Policy.

Ex. 5 at 26 (emphasis added). This policy identifies Insured's Premises as the Plant (*id.* at 3, 5), and the GE Defendants' actions alleged in the Amended Complaint relate to the Blades installed and maintained at the Plant. *See, e.g.,* Am. Compl. ¶¶54-55. This subrogation wavier is dispositive as to GEII and, derivatively, all GE Defendants.

This same policy provides a second basis for subrogation waiver as to the GE Defendants. Where a third-party is contractually indemnified by SNC (an "Insured"), Plaintiffs' subrogation rights are *also* waived under the policy:

---

Contract is referred to by name in the Amended Complaint. *See e.g.* Am. Compl. ¶18. The Services Contract also remains central to it. *Supra* IV.A.1.b; IV.E. The remaining Contracts are central to this case as they are the sole basis for the GE Defendants selling and installing Blades in SKH's Plant. *See e.g.* Am. Compl. ¶¶1, 54-55; Ex. 2-4.

**4. ADDITIONAL INTERESTS**
Where appropriate this Policy will also indemnify: …
b) other parties to any lease or other agreement entered into by the Insured but only
to the extent specified in such lease or agreement. The nature and extent of any
interest shall be disclosed in the event of loss destruction or damage. *The insurer
shall also waive all rights of subrogation against such other parties*;

Ex. 5 at 24 (emphasis added). The Services Contract reads:

*In all cases of damage to the Site, to the Power Station or to the Power Train Set(s),
that is due to any act or omission by the Service Provider, its Affiliates or
subcontractors,* but with the exception of grievous fault or fraud by the Service
Provider, *[SNC] undertakes to warrant and hold the Service Provider harmless as
regards any liability (whether contractual or non-contractual), with or without fault,
as regards damages to property or consequential damages, or otherwise), any loss
and all expenses (including attorneys' fees and expenses relating to lawsuits)
incurred by the Service Provider*, that arise from, or are provoked by, any action,
application, motion, claim by, or on behalf of, any or all owner of the Power Train
Sets, the Power Station and/or the Site, *or by their insurance companies.* The
provisions set forth in this subsection shall not grant any or all waiver of *[SNC]*
and/or Project Owner's insurance companies' right of subrogation vis-à-vis the
Service Provider as regards a serious breach on it's part.

Ex. 1 §9.7.1 (emphasis added). The Amended Complaint neither discloses these

subrogation waivers, nor addresses how *any* of Plaintiffs' claims survive them.

Further, application of these waivers to foreclose Plaintiffs' case in its entirety is

consistent with the Services Contract, which broadly mandated Plaintiffs' subrogation

rights be waived as to *all* of the GE Defendants:

**9.4 Subrogation**  The Operator shall obtain from the insurers a written waiver of
their rights of subrogation in favor of *each of the Service Provider's constituent
members, its parent company, its subsidiaries and its Affiliates* under the all-risk
Property and Boiler and Machinery Breakdown insurance policies and Business
interruption insurance of the Operator as indicated at Appendix 6 (Insurances).

*Id*. §9.4 (*Italic* emphasis added). Appendix 6, in turn, required the procurement of

insurance policies (again, with subrogation waivers in favor of the GE Defendants)

covering the precise subject matter of the Incident and the identical claims/losses sought to

be recovered in the Amended Complaint (*i.e.,* "business interruption losses and property

damage," Am. Compl. ¶2):

> **OPERATOR'S OR PROJECT OWNER'S INSURANCES**      The Operator
> maintains or ensures that the Project Owner maintains for the duration of the
> Agreement the following insurance: …
> ● All-risk Property and Boiler and Machinery breakdown insurance including
> coverage *for the full value of the* Gas Turbine Units and the *Power Station*.
> ● *Business interruption insurance* with a limit per claim and per year equivalent to
> 50% of the Project Owner's annual revenue….

Ex. 1 at App'x 6 (*Italic* emphasis added). That is, the GE Defendants have a contractual

right to insurers' waiver of subrogation for "insurance policies for … Boiler rupture and

machinery breakdown," property damage, and business interruption without limitation as

to whether the insurance of SKH and/or SNC. Those are precisely the types of insurance

coverage implicated by the Incident, and the Amended Complaint seeks recovery for

claims/losses Plaintiffs allegedly paid under that very same coverage.

As further support for all insurance policies on which Plaintiffs rely waiving

subrogation as to the GE Defendants, that result is consistent with (if not compelled by)

the O&M Contract between SKH and SNC. Section 9.4 thereof provides SKH and SNC

"shall obtain from their respective insurers[, *e.g.,* Plaintiffs] a written waiver of their rights

of subrogation in favor of the other Party *and its subcontractors* under these policies."

Ex. 6 §9.4 (emphasis added). The GE Defendants are indisputably subcontractors of

SNC.[29] Beyond this explicit requirement, SKH agreed in the O&M Contract that SKH would have "[SNC] and its subcontractors listed as additional insured on its insurance policies," *id.* §9.2.8, and Plaintiffs (also) waived subrogation within the insurance policies as to additional insureds, Ex. 5 §13. SKH (and SNC) both intended, and were required to effect, subrogation waiver as to the GE Defendants.

Therefore, the GE Defendants contend all policies on which Plaintiffs rely contain subrogation waivers barring the Amended Complaint against the GE Defendants (either in whole or in part). To the extent Plaintiffs rely in their Opposition on policies other than what was provided to the GE Defendants, the Court is asked to infer the contractually-mandated waivers were, in fact, effected.[30]

### B. Plaintiffs' Damages Are Barred by the Contracts

Plaintiffs seek ≥$28 million for property damages and business interruption losses from the alleged incident regarding the Blades. Am. Compl. ¶84. Every claim pleads damages only for property damages to, and business interruption losses at, the Plant. *Id.* ¶¶91, 99, 110, 117, 125, 133, 142. However, the Blades were only sold, installed, and serviced at the Plant due to the Contracts. *See* Ex. 1-4. The Contracts bar any claims for both property damage and business interruption losses. The Services Contract provides:

---

[29] That is, to the extent any GE Defendant has any liability under the Amended Complaint and/or with respect to the Plant. *See* Part IV.F, *supra*.

[30] Alternatively, the Court should defer ruling until completing expedited discovery of the following insurance policies in their entirety, necessary to determine whether Plaintiffs have standing: (i) all policies identified in the Amended Complaint; and (ii) any other policies on which a loss/claim sought to be recovered in this action was paid or made.

Under no circumstances shall the Service Provider or its subcontractors or suppliers owe the Operator damages for loss of profits or indirect or consequential damages, and, in particular, for loss of profits or revenue, loss of use of the Power Station or the Power Train Set(s), or of any or all related equipment, capital costs, the cost of equipment, facilities, replacement services or energies, costs as regards breakdown time, claims from the Operator's third party counterparts as a result of said loss.

Ex. 1 §9.7.4(G). The Supply Contract states that:

Consequential damages: neither of the Parties shall owe the other any damages in terms of indirect or consequential or immaterial damages. The Parties expressly agree to consider any loss of profit, loss of production, loss of contract and any recourses of third parties as indirect or consequential or immaterial damages.

Ex. 2 §15.4(C). The Installation Contract provides:

In no event, whether as a result of breach of contract, warranty, indemnity, tort (including negligence), strict liability, or otherwise, shall Seller or its subcontractors or suppliers be liable for loss of profit or revenues, loss of use of the Purchaser's Equipment or any associated equipment, cost of capital, cost of substitute equipment, facilities, services or replacement power, downtime costs, claims of Purchaser's customers for such damages, or for any special, consequential, incidental, indirect or exemplary damages."

Ex. 3 App'x A §9.2. Last, the Coordination Contract states claims brought under the Supply Contract, Installation Contract, or Coordination Contract are subject to any limitations in liability under either the Supply Contract or Installation Contract. *See* Ex. 4 §4.9(c).[31]

While SKH is not a party to the Contracts, SKH did receive benefits under the Contracts and is, therefore, bound to their substantive provisions (and provisions governing dispute resolution procedures). *See supra* IV.A.1.b. Moreover, the limitation on liability

---

[31] Various other provisions in the Contracts also serve to limit the amount of damages in this action, or to require SNC to cover any damages the GE Defendants are liable for in this action. The GE Defendants reserve all rights concerning these arguments.

provisions cover all claims by third parties, including SKH.[32] Because all of Plaintiffs'

damages are barred by the Contracts, the Court should dismiss the Amended Complaint.

### C.    Plaintiffs Fail to State a Claim for Gross Negligence (Count II)

In Georgia, gross negligence means the failure to exercise "that degree of care which

every man of common sense, however inattentive he may be, exercises under the same or

similar circumstances." O.C.G.A. §51-1-4. "In other words, gross negligence has been

defined as equivalent to the failure to exercise even a *slight* degree of care." *A.H. ex rel.*

*Scott v. Callaway Gardens Resort, Inc.*, No. 4:20-CV-00100-CDL, 2021 WL 4928009, at

*2 (M.D. Ga. Oct. 21, 2021) (emphasis in original) (citations omitted). Courts dismiss

claims for gross negligence when duplicative of a negligence claim or where the plaintiff

merely makes a conclusory allegation concerning a lack of any care.[33]

Plaintiffs' gross negligence claim is identical to their claim for negligence, *see* Am.

Compl. ¶¶86-100, except Plaintiffs add the single legal conclusion to their gross negligence

---

[32] Ex. 1 §9.7.4(G) (including "claims from the Operator's third party counterparts as a result of said loss," i.e. "loss of profits or indirect or consequential damages"), Ex. 2 §15.4(C) ("The Parties expressly agree to consider … any recourses of third parties as indirect or consequential or immaterial damages."), Ex. 3 App'x A §9.2 ("In no event, whether as a result of breach of contract, warranty, indemnity, tort (including negligence), strict liability, or otherwise, shall Seller or its subcontractors or suppliers be liable for … claims of Purchaser's customers for such damages", Ex. 4 §4.9(c) (looking to Supply Contract and Installation Contract's limitations on liability).

[33] *See Gann v. Trabue*, No. 2:20-CV-90-RWS, 2020 WL 12309336, at *5 (N.D. Ga. July 27, 2020) (dismissing gross negligence claim where complaint "simply states [defendant] drove "recklessly" but includes no facts to show how [defendant] failed to exercise slight diligence."); *Diamond v. Morris, Manning & Martin, LLP*, No. 1:09-CV-2894-TCB-CCH, 2010 WL 11507021, at *5 (N.D. Ga. May 24, 2010), report and recommendation adopted, No. 1:09-CV-2894-TCB, 2010 WL 11509124 (N.D. Ga. June 18, 2010).

claim that "these failures were so wanton, careless and/or reckless so as to constitute acts of gross negligence." *Id.* ¶97. The Amended Complaint does not allege a single fact to plausibly support the allegation the GE Defendants failed to exercise even a slight degree of care. *See gen.* Am. Compl. On the contrary, the Amended Complaint is filled with examples of the GE Defendants exercising care concerning the Blades. *See* Am. Compl. ¶¶51, 64, 65, 69, 71, 75-77. Count II should be dismissed.

### D.   Plaintiffs Fail to State a Claim for Breach of the Warranty of Merchantability (Count IV)

The Amended Complaint alleges breaches of both "express *and/or* implied warranties … that … components would be suitable for their intended purpose and reasonably free from defects." *See* Am. Compl. ¶112 (emphasis added). To make these "warranty" claims, Plaintiffs necessarily invoke the Services Agreement[34] and depend on privity with the GE Defendants, underscoring the appropriateness of the non-signatory doctrines' application. *See, infra, IV.* Plaintiffs' warranty claim and avoidance of the Arbitration Provision are irreconcilable: Plaintiffs cannot *dodge* arbitration mandated by the Service Contract, yet concurrently (and advantageously) *advance* claims that hinge on having privity with at least one of the GE Defendants. If the Court declines to apply third-party beneficiary or estoppel doctrines (to enforce the Arbitration Provision), then it *must* follow that privity—a necessity for Plaintiffs' warranty claim—is absent.

---

[34] *See, e.g.,* Ex. 1 §9.9 ("The Service Provider warrants to the Operator that the Parts and Machinery delivered during the term of this Agreement … shall be free from defects in material, workmanship and title ….").

To bring a claim for implied warranty of merchantability, privity must exist between the plaintiff (buyer) and defendant (seller).[35]

Similarly, unless the manufacturer extends the warranty to the end purchaser, there must be privity between the parties for a claim of an express warranty. *See Morgan v. Dick's Sporting Goods, Inc.*, 359 F. Supp. 3d 1283, 1292 (N.D. Ga. 2019) ("[I]f a defendant is not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on a express warranty, if any, arising out of the prior sale by the defendant to the original purchaser.") (citation omitted); *Edwards v. Wis. Pharmacal Co., LLC*, 987 F. Supp. 2d 1340, 1346 (N.D. Ga. 2013) (dismissing express and implied warranty claims for failing to plead privity). Finally, key to a claim for breach of an express warranty is the existence of a warranty. *See* O.C.G.A. §11-2-313; *Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1227 (N.D. Ga. 2005) ("A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty.").

Fatal to *any* warranty claim by Plaintiffs, the Amended Complaint does not allege that SKH purchased the Blades directly from the GE Defendants. *See gen.* Am. Compl.

---

[35] *See Gill v. Blue Bird Body Co.,* 147 F. App'x 807, 810 (11th Cir. 2005) (implied warranty claim "may be enforced only by the *original* buyer, who stands in privity of contract with the seller-defendant") (emphasis in original); *Monticello v. Winnebago Indus., Inc.*, 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005) ("In Georgia, a warranty of merchantability 'clearly arises out of a contract of sale of goods, [and] can only run to a buyer who is in privity of contract with the seller.'") (citation omitted); *Paul v. Ingersoll-Rand Co.*, No. 1:10-CV-00708-JOF, 2011 WL 13269791, at *1 (N.D. Ga. Jan. 14, 2011) ("In order to assert a claim for breach of an implied warranty of merchantability, Plaintiff must be in privity with Defendant.").

Plaintiffs cannot make this allegation because each of the Contracts was with SNC alone (not SKH). Ex. 1, 3, 4. Further, implied warranties were expressly disclaimed within the Supply Contract's provision waiving any warranties not expressly included.[36] The Services Contract did the same. Ex. 1 §9.9 (one-year warranty that "Parts" are free from defects "in lieu of all other warranties and guaranties").

As to express warranty, Plaintiffs failed to plausibly plead one. *See gen* Am. Compl. The Amended Complaint's mere, conclusory statement that "Defendants made express and/or implied warranties to SKH," *id.* ¶112, does not suffice under federal pleading standards[37]—nor did Plaintiffs allege that any express warranty extended to SKH (as opposed to the original purchaser, SNC). Count IV for breach of the warranty of merchantability—"express *and/or* implied"—should be dismissed. *Id.*

### E.     Plaintiffs Fail to State a Claim for Either Negligent or Fraudulent Misrepresentations (Count V)

Negligent and fraudulent misrepresentations are two separate causes of action, but Plaintiffs combined them in a single count.[38] In the Eleventh Circuit, both fraudulent and

---

[36] *See* Ex. 2 at 5 ("no characteristic of the Equipment shall be deemed a defect by virtue of failure to comply with any warranty implied by law, and any such implied warranty is hereby disclaimed to the fullest extent permissible"); *see also* Ex. 3 App'x A §8.4 ("NO IMPLIED STATUTORY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE SHALL APPLY").

[37] Any conceivably applicable warranty (exclusively in the Services Contract) expired "one (01) year after … installation…." Ex. 1 §9.9. The Amended Complaint alleges the Blades that failed and caused the October 14, 2019 incident were installed "in or around April 2018," ~six months after such warranty must have expired. Am. Compl. ¶¶76, 78, 89.

[38] A claim for fraudulent misrepresentation must allege: "(1) that defendant made a false misrepresentation or omission of a material fact; (2) that defendant knew the representation

negligent misrepresentations are subject to the heightened pleading standard of FRCP 9(b).[39]

Plaintiffs do nothing more than merely recite the elements of a fraud or negligent misrepresentation claim. *See* Am. Compl. ¶¶118-25. Most glaringly, the Amended Complaint does not identify a single representation any of the GE Defendants made to SKH or on which SKH relied, let alone plead any such representation with the particularity required under FRCP 9(b). *See id.* Plaintiffs, similarly, fail to sufficiently plead any other elements of the two claims. *Id.* Count V should be dismissed.

## VI.   <u>CONCLUSION</u>

The GE Defendants respectfully request the Court compel Plaintiffs to arbitrate and dismiss the Amended Complaint, or, alternatively, dismiss it pursuant to FRCP 12(b)(6).

---

was false at the time he made it; (3) that defendant intended to deceptively induce plaintiff to act or refrain from acting; (4) that plaintiff justifiably relied on the representation; and (5) that plaintiff suffered damages as a result of his reliance." *Intellicig USA LLC v. CN Creative Ltd.*, No. 1-15-CV-01832-AT, 2016 WL 5402242, at *8 (N.D. Ga. July 13, 2016) (citations omitted). For negligent misrepresentation, a complaint must allege: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1030 (11th Cir. 2003) (citation omitted).

[39] *See Smith v. Ocwen Fin.,* 488 F. App'x 426, 428 (11th Cir. 2012) ("for the claims alleging fraudulent conduct—i.e., the claims for fraud, collusion, and negligent misrepresentation—Ms. Smith fails to plead with particularity the actions of Ocwen that form the basis of those claims as required by Rule 9(b)."); *Intellicig*, 2016 WL 5402242, at *8. Rule 9(b) requires a plaintiff to plead the elements with specificity, *i.e.*, who, what, when, where and why. *See FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

Dated: July 22, 2022

Respectfully Submitted,

/s/ William K Whitner
William K Whitner
GA Bar No. 756652
Eric D. Stolze
GA Bar No. 425966
PAUL HASTINGS LLP
1170 Peachtree Street, N.E.
Suite 100
Atlanta, GA, 30309
Tel: (404) 815-2400
Fax: (404) 815-2424
kwhitner@paulhastings.com
ericstolze@paulhastings.com

Kurt W. Hansson
(*pro hac vice forthcoming)*
James L. Ferguson
(*pro hac vice forthcoming*)
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10165
Tel: (212) 318-6000
Fax: (212) 230-7843
kurthansson@paulhastings.com
jamesferguson@paulhastings.com

*Attorneys for Defendants General
Electric International, Inc., General
Electric Company, GE Power Services
Engineering, and GE Power*

## <u>CERTIFICATE OF SERVICE</u>

I electronically filed the foregoing Memorandum of Law in Support of Defendants'

Motion to Compel Arbitration or, Alternatively, to Dismiss the First Amended Complaint

with the Clerk of Court using the CM/ECF system, which will automatically send email

notification of such filing to the following attorneys of record:

Jonathan D. Kramer
FIELDS HOWELL LLP
1180 West Peachtree St, Suite 1600
Atlanta, Georgia 30309
jkramer@fieldshowell.com

Christopher R. Carroll
Michael J. Tricarico
Thomas C. Kaufman
KENNEDYS CMK LLC
570 Lexington Avenue
New York, NY 10011
Christopher.Carroll@kennedyslaw.com
Michael.Tricarico@kennedyslaw.com
Thomas.Kaufman@kennedyslaw.com

/s/ William K Whitner
William K Whitner

## <u>LOCAL RULE 7.1(D) CERTIFICATE</u>

The undersigned hereby certifies that the foregoing has been formatted in Times

New Roman font, 14-point type, which complies with the font size and point

requirements of Local Rule 5.1(B) and (C).

/s/ William K Whitner
William K Whitner